1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10   YOLANDA ZALDIVAR,                CASE NO. 15CV67-GPC(RBB)

11                       Plaintiff,   **ORDER GRANTING IN PART AND
                                      DENYING IN PART
12        vs.                         DEFENDANT'S MOTION FOR
                                      SUMMARY JUDGMENT AND
13                                    DENYING PLAINTIFF'S MOTION
     CITY OF SAN DIEGO,               FOR SUMMARY JUDGMENT**
14
                        Defendant.    [Dkt. Nos. 44, 46.]
15

16

17

18        Before the Court are Defendant City of San Diego's motion for summary

19   judgment and Plaintiff's motion for partial summary judgment.  (Dkt. Nos. 44, 46.)

20   Oppositions and replies were filed.  (Dkt. Nos. 54, 55, 56, 58.)   The motions are

21   submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1).

22   Based on the briefs, the supporting documentation, and the applicable law, the Court

23   GRANTS in part and DENIES in part Defendant's motion for summary judgment and

24   DENIES Plaintiff's motion for summary judgment.

25                       **Procedural Background**

26        On January 13, 2015, Plaintiff Yolanda Zaldivar ("Plaintiff" or "Zaldivar") filed

27   a complaint against the City of San Diego ("Defendant" or "the City").  (Dkt. No 1.)

28   On September 22, 2015, Plaintiff filed the operative first amended complaint ("FAC")

1   for violations of Title II of the American with Disabilities Act, ("ADA"), 42 U.S.C. §
2   12131 *et seq*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.; and
3   California's Disabled Persons Act, ("DPA"), Cal. Civ. Code § 54 *et seq*.

4       In its motion, Defendant seeks summary judgment on all causes of action in the
5   FAC. (Dkt. No. 44.)  In her motion, Plaintiff seeks partial summary judgment on the
6   ADA, DPA and the remedy of an injunction. (Dkt. No. 46.)

7   **Background**

8       Plaintiff resides at 4412 Arizona Street, San Diego, California.  (Dkt. No. 55-8,
9   D's Response to P's SSUF No. 6.) El Cajon Boulevard is the nearest major cross street
10  near her home and Plaintiff travels by wheelchair along the sidewalks on El Cajon
11  Boulevard almost every day for business and leisure.  Plaintiff relies on the sidewalks
12  to reach the various businesses located on El Cajon Boulevard to shop, buy food and
13  groceries, and complete errands.  (Id., No. 7.)  She also relies on the sidewalks on El
14  Cajon Boulevard to reach the bus stops near her home in order to travel to other parts
15  of the City to meet with friends and go to doctor's appointments.  (Id., No. 8.)

16      City of San Diego is a public entity.  (Id., No. 2.)  The system of sidewalks along
17  El Cajon Boulevard and University Avenue in the City of San Diego is a program,
18  service, and activity offered by the City to the public.  (Id., No. 4.)

19      In 2014, the City of San Diego entered into a contract with KTA Construction
20  Inc. ("KTA") to work on Water Group Job 944.  (Dkt. No. 54-1, P's Response to D's
21  SSUF Nos. 1, 2.)  The project was to address necessary maintenance and repair to the
22  City s water mains and lasted about nine months.  (Id., Nos. 3, 4.)  The City's Water
23  Group Job 922 used a process called "high-line"[1] to provide a temporary water supply
24  for the residents while it worked on the water main.  (Id., No. 5.)  According to the City
25  of San Diego's website, "[h]igh-lines are 2-inch diameter water pipes that are
26  temporarily installed along the face of the curb and attached by a rubber hose to your
27  water meter. . . . These temporary pipes will supply water to your home as the old water
28  _____

[1]In its briefs, the City does not explain or define "high-line."

1  mains are replaced. . . . Because these high-lines are placed above the ground, motorists
2  and pedestrians should exercise caution around them. For added safety, an asphalt
3  mixture is placed over the high-lines where they pass driveways and other high traffic
4  areas."[2]    City of San Diego, Water & Sewer Projects,
5  https://www.sandiego.gov/water-sewer-construction (last visited July 13, 2016).  For
6  Water Group Job 944, the high-line was above ground and covered with cold-patched
7  material similar to asphalt.  (Dkt. No. 55-3, D's List of Exs. in Opp., Ex. F, Ascencio
8  Depo. at 11:11-12:19.)

9      KTA was hired to install the high-line, and replace the existing water main and
10  install a new one.  (Dkt. No. 55-3, D's List of Exs. in Opp., Ex. F, Ascencio Depo. at
11  8:15-9:4.)  The project began in the middle of 2014 and lasted about nine months.  (Id.
12  at 9:13-21.)  The high-lines were present for about seven months but the high-lines
13  were present at different locations and were not in place at all locations at the same
14  time.  (Id. at 14:4-7.)  The high-lines were done in four phases.  (Id. at 10:9-11:2.)
15  Phase 1 was on El Cajon Boulevard between Mississippi Street and Idaho Street; Phase
16  2 was on Oregon Street between El Cajon Boulevard and Meade Avenue; Phase 3 was
17  on El Cajon Boulevard between Mississippi Street and Georgia Street; and Phase 4 was
18  on Madison between Florida Street and Georgia Street.[3]  (Id.)  While the high-lines
19  were in place, pedestrians were allowed to walk over and use the sidewalks and curb
20  ramps.  (Id. at 13:3-6.)  KTA made sure that the sidewalks and curb ramps were still
21  accessible to the public.  (Id. at 15:7-19.)

22      The cold mix or asphalt on top of the pipes were tapered to provide a ramp and
23  had a two-fold purpose: it was to provide a ramp for pedestrians to access the sidewalk
24  and to distribute the load over the pipes to avoid damaging them.  (Dkt. No. 46-14,

25  _____

26      [2]Plaintiff references the high-lines as "water pipes and asphalt" along the curb
27  ramps of the sidewalks on El Cajon Boulevard.  (See Dkt. Nos. 53-1, 53-2, Lodgment 7 (photographs of high-lines).)

28      [3]The parties do not provide a map as to the location of the different phases and its relation to the streets at issue in this case.

1  Masanque Decl., Ex. 11, Ascencio Depo. at 19:1-24; Dkt. No. 46-16, Masanque Decl.,

2  Ex. 12, Nagelcoort Depo. at 27:22-28:1-4.)  The asphalt covered the curb ramp a little

3  and was smoothed out to the gutter so there was a smooth transition for pedestrians and

4  wheelchairs.  (Dkt. No. 46-14, Masanque Decl., Ex. 11, Ascencio Depo. at 19:5-22.)

5  The City's Director of Public Works testified that he was not aware of any specific

6  slope that were required for the high-lines.  (Dkt. No. 46-16, Masanque Decl., Ex. 12,

7  Nagelvoort Depo. at 28:5-7.)

8       On September 25, 2014, Plaintiff submitted a Government Claim to the City of

9  San Diego Risk Management Department, which stated the following:

10      Claimant is an individual with disabilities who requires an electric
        wheelchair for mobility.  She has been prevented and deterred from
11      using the sidewalks along El Cajon Blvd to travel in the community
        and patronize local businesses due to loose water pipes and hoses
12      secured haphazardly by asphalt at curb ramps and intersections,
        creating excessive slopes, drops and other hazardous conditions."
13
   (Dkt. No. 54-1, P's Response to D's SSUF Nos. 13, 14.)
14
15      Plaintiff admits that when she allegedly first encountered the alleged loose water

16  pipes and hoses, she never told anyone including the City and the construction

17  company.  (Id., No. 22.)  During the City's Water Group Job 944, Plaintiff used the

18  sidewalks to access and patronize stores and businesses in her neighborhood.  (Id., No.

19  25.)  Plaintiff admits that water hoses and pipes are no longer present.  (Id., No. 26.)

20      Plaintiff was aware of the City of San Diego's ADA Compliance and

21  Accessibility Department prior to filing her Complaint and First Amended Complaint,

22  but never contacted the department to make a complaint.  (Id., No. 32.)  The City has

23  departments in place to receive and respond to complaints from its citizens.  (Id., No.

24  34.)

25      Plaintiff intends to continue using the sidewalks and curbs along El Cajon

26  Boulevard and sidewalks at University Avenue between Park Boulevard and Richmond

27  Street in the future for leisure and daily activities on a regular and ongoing basis.  Thus,

28  Plaintiff would like the ability to safely and independently access the sidewalks and
    curbs.  (Dkt. No. 55-8, D's Response to P's SSUF No. 30.)

1    In her motion for summary judgment, Plaintiff alleges that she encountered
2  barriers when water pipes and hoses were installed along curb ramps during the City's
3  Water Group Job 944.  Second, she claims she encountered barriers at various locations
4  along the sidewalks and ramps on El Cajon Boulevard and University Avenue between
5  Park Boulevard and 33rd Street (hereinafter referred to as "El Cajon Boulevard and
6  University Avenue") on an ongoing basis, including before, during and after the Water
7  Group Job 944.[4]

**Discussion**

9  **A.    Legal Standard on Motion for Summary Judgment**

10   Federal Rule of Civil Procedure 56 empowers the Court to enter summary
11  judgment on factually unsupported claims or defenses, and thereby "secure the just,
12  speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477
13  U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings,
14  depositions, answers to interrogatories, and admissions on file, together with the
15  affidavits, if any, show that there is no genuine issue as to any material fact and that the
16  moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact
17  is material when it affects the outcome of the case.  Anderson v. Liberty Lobby, Inc.,
18  477 U.S. 242, 248 (1986).

19   The moving party bears the initial burden of demonstrating the absence of any
20  genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can
21  satisfy this burden by demonstrating that the nonmoving party failed to make a
22  showing sufficient to establish an element of his or her claim on which that party will
23  bear the burden of proof at trial.  Id. at 322-23.  If the moving party fails to bear the
24  initial burden, summary judgment must be denied and the court need not consider the
25  nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60
26  (1970).

28    [4]The specific barriers she encountered on these sidewalks and curb ramps are listed in paragraph 16 of the FAC and discussed in Plaintiff's deposition. (Dkt. No. 25, FAC ¶ 16; Dkt. No. 57-1, P's NOL, Zaldivar Depo.)

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**B.    Standing**

In the City's motion for summary judgment, it argues that Plaintiff cannot establish Article III standing because Plaintiff has not offered any proof that she suffered any concrete and personal injury.[5]  In her deposition, Plaintiff testified that she is suing the City because she wants all streets in the City to be safer which alleges an improper general grievance against the City.  In response, Plaintiff argues that she lives in the neighborhood at issue and has personally encountered the barriers on the sidewalk on countless times before, during, and after the Water Group Job.  In reply, the City argues that the FAC does not allege a single violation of her right to travel but

---

[5]As part of its argument, the City cites to California Civil Code section 55.56 which provides for statutory damages against a place of *public accommodation* only if a violation denied a plaintiff full and equal access on a particular occasion, which includes being deterred from accessing a place of *public accommodation*. See Cal. Civ. Code §§ 55.56(a) & (b) (emphasis added).  Plaintiff responds that section 55.56 only applies to places of "public accommodation" and not to "public entities."  In reply, the City does not address Plaintiff's argument and appears to concede this argument.  The Court declines to address the City's argument regarding section 55.56 as it does not concern public entities. See Cal. Civil Code § 55.56

the FAC only asserts speculative violations along the 1.4 mile stretch of El Cajon Boulevard and cannot identify one location that prevented her from traveling and enjoying her community. Moreover, Plaintiff was able to access and patronize the stores and businesses in her neighborhood during the city's Water Group Job.

Article III, section 2 of the United States Constitution requires that a plaintiff have standing to bring a claim. See U.S. Const. art. III, § 2. In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The party seeking federal jurisdiction has the burden of establishing its existence. Lujan, 504 U.S. at 561. "The Supreme Court has instructed courts to take a "broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)). An "injury in fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." See Lujan, 504 U.S. at 560-61. "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." Id. at 560 n. 1.

The City selectively cites to portions of Plaintiff's deposition where she testified that she did not remember the first time she was deterred from getting around the neighborhood and the first time she encountered the hoses and pipes. (Dkt. No. 44-4, City's List of Evidence, Ex. 1, Zaldivar Depo. at 80:19-23; 99:5-10; 103:2-5; 107:9-18.) In addition, she testified she did not remember how many times she encountered the allegedly loose water pipes and hoses. (Id. at 99:11-20; 103:6-9; 107:9-18.) It also

cites to portions of Plaintiff's deposition asserting that she is suing the City in order to improve the sidewalks and the ramps and make them safer for others in wheelchairs. (Id. at 62:4-15, 64:2-18.)

In response, Plaintiff cites to her testimony explaining how the barriers on the sidewalks and ramps affected her in a personal and individual way. Plaintiff moved into the neighborhood in March 2014 and testified that she travels on El Cajon Boulevard everyday when she leaves her home. (Dkt. No. 57-1, P's NOL, Zaldivar Depo. at 80:24-81:2; 140:4-6.) In March 2014, Plaintiff had problems traveling her neighborhood because of uneven sidewalks, cracks, and in many places, no sidewalk ramps. (Id. at 81:10-18; 93:14-19.) Plaintiff testified that she personally encountered the alleged dangerous conditions in her wheelchair. (Id. at 77:18-78:2). Traveling over rough sidewalks and ramps has caused her to experience pain in her hip and throughout her back. (Id. at 78:3-19.) When riding on the uneven sidewalks, she fears falling over or getting stuck because she is unable to get out of her wheel chair. (Id. at 79:10-19.) In addition, if she got stuck, she fears that she might get robbed. (Id.) When the water hoses and pipes were in place, it was difficult to pass because they were very uneven and bumpy and she was afraid of tipping forward. (Id. at 115:3-11.) Even after the water hoses and pipes were removed, she still has trouble getting around because there are little clumps of asphalt that remain. (Id.)

Along El Cajon Boulevard between 33d Street and Park Avenue[6], there are spots of asphalt that are difficult to navigate over, and along the whole stretch of El Cajon Boulevard, there are uneven sidewalks, due to cracked concrete and asphalt, and asphalt patches causing a sloped and uneven surface, and these problems remain even after the hoses and pipes were removed. (Id. at 140:14-18; 141:4-20; Dkt. No. 46-5,

---

[6]Plaintiff does not provide a map of the streets she alleges she encountered barrier. The only maps provided are attached to the declaration of Plaintiff's expert, Paul Bishop, (see, e.g., Dkt. No. 46-6, Bishop Decl. 10; 46-8, Ex. 5 (map)), but the map is limited to a section of the streets from Mississippi Street to Hamilton Street along El Cajon Boulevard, not the areas from Park Boulevard to 33d Street along El Cajon Boulevard. Moreover, no map is provided as to the streets at issue along University Avenue.

Mansanque Decl., Ex. 2, Zaldivar Decl. ¶ 15.)   The uneven sidewalks cause her wheelchair to dip in several different directions at once and puts her at risk of tipping over and the shaking and jolting of the wheelchair due to the uneven surfaces cause extreme pain to her legs and back. (Dkt. No. 46-5, Mansanque Decl., Ex. 2, Zaldivar Decl. ¶ 16.)

She testified that there are no curb ramps on the eastern side of El Cajon Boulevard at Florida Avenue. (Dkt. No. 57-1, Zaldivar Depo. at 111:24-25; Dkt. No. 46-5, Masanque Decl., Ex. 2, Zaldivar Decl. ¶ 17.)   When the water pipes and hoses were installed, they prevented her from going to the 7-Eleven and getting to her bus stop on El Cajon Boulevard on both sides of the street. (Dkt. No. 57-1, Zaldivar Depo. at 111:1-7.)  She was still able to go to the 7-Eleven but she had to backtrack. (Id. at 111:12-14.)   Even with the hoses and water pipes removed, she still has problems because there are no curb ramps at Florida Street and El Cajon Boulevard.  (Id. at 111:15-112:4.)

After the high-lines were removed, at Texas Street and El Cajon Boulevard, there were little clumps of asphalt near the curb ramp on Texas Street which created a lip that Plaintiff had to travel over in order to cross the curb ramp. (Id. at 130:7-17; Dkt. No. 46-5, Masanque Decl., Ex. 2, Zaldivar Decl. ¶ 19.)   The lip caused Plaintiff's wheelchair to climb up and drop abruptly causing her wheelchair to jolt. (Dkt. No. 46-5, Masanque Decl., Ex. 2, Zaldivar Decl. ¶ 19.)

At the crosswalk on El Cajon Boulevard near Park Boulevard, she states there is insufficient crossing time for persons with disabilities. (Dkt. No. 57-1, Zaldivar Depo. at at 141:21-142:7.)

Since moving to the areas in March 2014, she also travels on University Avenue between Park Boulevard and Richmond Street about five to ten times a month to visit her mother and to go shopping. (Id. at 143:7-144:24.)  She has experienced difficulty using the sidewalks because the curb ramps at the corner of Park Boulevard and University Avenue were too steep and uneven to navigate. (Dkt. No. 46-5, Masanque

[15CV67-GPC(RBB)]

Decl., Ex. 2, Zaldivar Decl. ¶¶ 22, 23.)

Plaintiff has clearly raised specific facts creating a triable issue of fact whether she suffered harm that was concrete and particularized. Accordingly, the Court DENIES Defendant's motion for summary judgment on the standing issue.

**C.     Title II of the ADA**

Both parties move for summary judgment on the ADA cause of action. Plaintiff's motion asserts that the City failed to provide programmatic access to its sidewalk system during Water Group Job 944, and programmatic access to sidewalks and curb ramps along El Cajon Boulevard and University Avenue on an ongoing basis. Defendant moves for summary judgment arguing that the Water Group Job 944 was an isolated or temporary interruption in service or access, which exempts the City from liability under the ADA. As to access to sidewalks along El Cajon Boulevard and University Avenue on an ongoing basis, the City argues that Plaintiff has not provided evidence as to locations of the alleged violations; therefore, she cannot establish a violation. In addition, the City argues it has removed or in the process of removing the barriers alleged by Plaintiff so the injunctive relief she seeks is moot.

In her briefing, conceding that the alleged barriers on the sidewalks and curb ramps during Water Group Job 944 have been removed and the alleged barriers along El Cajon Boulevard and University Avenue have been corrected or in the process of being corrected, Plaintiff also seeks prospective injunctive relief requiring the City to implement policies to provide disability access to sidewalks and curb ramps during any future construction projects.

Title II of the ADA applies to public entities. Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1273 (9th Cir. 1998); see 42 U.S.C. § 12131. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II emphasizes 'program access,' meaning that a

public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." Cohen v. City of Culver City, 754 F.3d 690, 694-95 (9th Cir. 2014) (citation omitted); see 28 C.F.R. §§ 35.150(a), 35.151(a).

Remedies under Title II of the ADA include injunctive relief regardless of intent and compensatory damages which requires a showing of discriminatory intent. Midgett v. Tri-County Metro. Transp. Dist. of Oregon, 254 F.3d 846, 851 (9th Cir. 2001). Plaintiff appears to seek an injunction and compensatory damages under the ADA. (Dkt. No. 25, FAC ¶ 32 & pg. 11.)

Pursuant to the ADA, the United States Department of Justice ("DOJ") was mandated to promulgate regulations implementing the ADA. 42 U.S.C. § 12134. The Ninth Circuit gives the DOJ's regulations interpreting Title II "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Cohen, 754 F.3d at 695 (quoting Armstrong v. Schwarzenegger, 622 F.3d 1058, 1065 (9th Cir. 2010)).

The access requirements are set forth in 28 C.F.R. §§ 35.149-35.151.  Section 35.149 sets forth a general prohibition against discrimination; § 35.150 governs the accessibility of existing facilities; and § 35.151 governs the accessibility of new construction and alterations.

As to existing facilities, a public entity must "operate each service, program, or activity, so that the service, program, or activity, when viewed in its entirety is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). Under this section, a public entity is not required "to make each of its existing facilities accessible." 28 C.F.R. § 35.150(a)(1).

As to new construction or alterations, 28 C.F.R. § 35.151 provides for a more exacting standard, Cohen, 754 F.3d at 699, where "[e]ach facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after

January 26, 1992." 28 C.F.R. § 35.151(a)(1).  As to curb ramps, this section provides,

> (i) Curb ramps. (1) Newly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level pedestrian walkway.
> (2) Newly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways.

28 C.F.R. § 35.151(i).  If alterations begin on or after March 15, 2012, then the 2010 Standards apply.  28 C.F.R. § 35.151(c)(3).

A city sidewalk is a "service, program or activity" within the meaning of Title II. Cohen, 754 F.3d at 695 (citing Barden v City of Sacramento, 292 F.3d 1073, 1076-78 (9th Cir. 2002)).  To demonstrate a violation under Title II, a plaintiff must show that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." Cohen, 754 F.3d at 695 (citing Weinreich v. L.A. Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997)).

Plaintiff is a "qualified individual with a disability" under the ADA. 42 U.S.C. § 12131(2). In the response to Plaintiff's SSUF, the City disputes Plaintiff's disability stating that she has not produced any evidence as to a medical diagnosis concerning her alleged disability, (Dkt. No. 55-8, City's Response to Pl's SSUF No. 1); however, the City does not raise the issue whether Plaintiff is disabled as defined under the ADA as an argument in its motion for summary judgment or in its opposition to Plaintiff's motion for partial summary judgment.

A person has a disability under the ADA if that person has a "physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). "Major life activities" include, as relevant here, "walking, standing, . . . bending . . . ." 42 U.S.C. § 12102(2)(A).  Disability under the ADA is measured "by reference to limitations on major life activities, not by reference

[15CV67-GPC(RBB)]

1   to doctors' past assessment of the plaintiff's condition." <u>Amyette v. Providence Health</u>
2   <u>Sys.</u>, 388 F. App'x 606, 607  (9th Cir. 2010).

3        Plaintiff testified that she suffers from arthritis and has "been treated for renal
4   failure and kidney disease that have left [her] with chronic joint and bodily pain" and
5   relies on an electric wheelchair for mobility. (Dkt. No. 50, Zaldivar Decl. ¶ 2; <u>see also</u>
6   Dkt. No. 55-3, City's List of Exs. in support of its Opp., Ex. D, Zaldivar Depo. at 43:6-
7   44:2.)  She testified she has been disabled because she has had arthritis and had leg
8   surgeries as a child because she was born with malformaties and her physical condition
9   has gotten worse over the years.  (Dkt. No. 55-3, City's List of Exs. in support of its
10  Opp., Ex. D, Zaldivar Depo. at 43:6-44:2.)

11       Besides improperly arguing that Plaintiff has not presented an official medical
12  diagnosis of her disability, <u>see</u> <u>Amyette</u>, 388 F. App'x at 607, Defendant has not raised
13  an argument in its briefs and has not presented any evidence to raise a triable issue as
14  to Plaintiff's disability.  Accordingly, the Court concludes there is no genuine issue of
15  material fact whether Plaintiff qualifies as an individual with a disability under the
16  ADA.

17        The City of San Diego is a public entity subject to Title II of the ADA.  42
18  U.S.C. § 12131(1).  It is undisputed that the system of sidewalks along El Cajon
19  Boulevard and University Avenue in the City of San Diego is a program, service, and
20  activity offered by the City to the public. (Dkt. No. 55-9, D's Response to P's SSUF
21  No. 4.)  The issue in dispute is whether Plaintiff was excluded or denied the City's
22  program, service and activity by not being provided access to sidewalks and curb ramps
23  near her home during the Water Group Job 944, and on an ongoing basis due to her
24  disability.

25       **1.    Programmatic Access During Water Group Job 944**

26       In her motion for partial summary judgment, Plaintiff argues that the City failed
27  to provide programmatic access to its sidewalk system during the Water Group Job
28

944.[7]  In the City's motion for summary judgment and opposition to Plaintiff's motion, the City argues that it should be granted summary judgment on all causes of action because Water Group Job 944 was an isolated or temporary interruption in  service or access subject to an exemption from ADA liability pursuant to 28 C.F.R. § 35.133(b). The high-lines used during the project by KTA were only used for about seven months and according to the City, constitute temporary interruption in service and they were removed when the project was completed and no longer exist.  Plaintiff disagrees arguing that the provision does not even apply because the 28 C.F.R. § 35.133(b) requires that the City be maintaining or repairing an "accessible feature" of its sidewalk and curbs when it created the obstruction.

28 C.F.R. § 35.133 concerns maintenance of accessible features and provides,

(a) A public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.
(b) This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.

28 C.F.R. § 35.133.  The Regulations explain that paragraph (b) "is intended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the Act or this part.  However, allowing obstructions or 'out of service' equipment to persist beyond a reasonable period of time would violate this part, as would repeated mechanical failures due to improper or inadequate maintenance."  28 C.F.R. pt. 35, app. B.

The Water Group Job's purpose was to repair the water mains, not to repair or maintain any accessible feature of the sidewalks or curbs.  The Court disagrees with

---

[7]In support, Plaintiff argues that in order to determine whether a program is accessible, the Court should follow the technical guidelines for pedestrian access routes in the Public Rights-of-Way Accessibility Guidelines ("PROWAG") developed by the United States Access Board. (Dkt. No. 46-1 at 13.)  In response, Defendant contends that the  Americans with Disabilities Act Accessibility Guidelines ("ADAAG") apply instead. (Dkt. No. 55 at 10.)  The Court need not address which technical guidelines apply to the alleged barriers on the sidewalks and curb ramps during Water Group Job 944 until after the issue of whether the exemption under 28 C.F.R. § 35.133(b) applies to the Water Group Job 944 is decided.

Plaintiff's argument, presented without legal authority, that the exception under 28 C.F.R. § 35.133(b) only applies to any maintenance or repair of an "accessible feature" of the sidewalk or curbs.   In Cohen, the obstruction created, a vendor's display blocking the curb ramp, was not related to maintenance or repair of an accessible feature, and the Ninth Circuit applied the exception under § 35.133(b) and held that whether the duration of the obstruction was reasonable is a question of fact.   See Cohen, 754 F.3d at 699.

The Cohen case is instructive as it involved a sidewalk curb ramp, and a temporary or isolated obstruction not related to ADA compliance.   In Cohen, the plaintiff was an elderly man with dementia who used a cane to walk due to declining cognitive function and poor balance.   Id. at 693.   The plaintiff was visiting the City of Culver to attend his grandson's wedding and walked through an outdoor car show on public streets and sidewalks to reach his hotel.   Id.   A vendor's display at the car show, which included a golf cart, several tables and a large canopy, completely blocked the disabled access curb ramp connecting the sidewalk to the street that provided the plaintiff access to the sidewalk in front of his hotel.   Id.   As the plaintiff tried to walk around the display and step up onto the sidewalk, he tripped and fell on his face sustaining injuries.   Id.   There were other curb ramps about twenty and ninety yards away in either direction, but there were no signs to point the plaintiff in those directions and there was no evidence that he was aware of the other ramps.   Id.   The district court granted summary judgment in favor of the defendant and the Ninth Circuit reversed in part the district court's ruling.   Id.   The Ninth Circuit concluded the district court improperly relied on precedent that relied on 28 C.F.R. § 35.150 for existing conditions.   Id. at 697.   Instead, the court held that when the city builds new sidewalks or alters existing ones for "reasons other than retrofitting to achieve ADA compliance", it falls under 29 C.F.R. § 35.151.   Id. at 698-99.   The court explained that the City was not renovating its existing sidewalks to achieve ADA compliance but allowed a private vendor to use its sidewalks for the purpose of holding a street fair.   Id. at 698.   28

[15CV67-GPC(RBB)]

1   C.F.R. § 35.151 is a more exacting standing and requires the defendant to build a "curb

2   ramp at every intersection unless doing so would be structurally impracticable." Id. at

3   698.  The court held that  there was a genuine dispute of material fact as to whether the

4   City denied Plaintiff access to the sidewalk by reason of his disability. Id. at 699.  The

5   Court also held that as to 28 C.F.R. § 35.133(b) whether the isolated or temporary

6   interruptions was reasonable is an issue of fact. Id. ("The trier of fact must determine

7   whether the duration of the obstruction was reasonable.").

8        In this case, as in Cohen, the City altered the existing sidewalks and curb ramps,

9   by installing high-lines, for reasons unrelated to ADA compliance.  It is not disputed

10  that the high-lines were used to facilitate the City's project to maintain and repair the

11  City's water mains.  Therefore, as to the water hoses and pipes, the standard under 28

12  C.F.R. § 35.151 applies.  See Cohen, 754 F.3d at 699.[8]

13       Therefore, whether the use of high-lines and asphalt for a seven month period

14  at different locations on El Cajon Boulevard was an isolated or temporary disruption

15  in service or access due to maintenance or repairs, subject to the exemption under 28

16  C.F.R. § 35.133(b), is an issue of fact for trial.  See Cohen, 754 F.3d at 700.

17       Alternatively, Plaintiff also argues that even if there were valid temporary

18  interruptions, the City violated the ADA by failing to provide alternative or temporary

19  routes for persons with disabilities.  The City did not take steps to ensure that non-

20  disabled pedestrians could continue using El Cajon Boulevard.  They provided access

21  to non-disabled pedestrians by tapering the asphalt to create a smooth transition but did

22  not provide such access to disabled people. Defendant does not address whether

23  alternative access was provided for persons with disabilities.

24       In Cohen, the Ninth Circuit also held that whether the City should have taken

25  steps to ensure that disabled persons had access during the temporary disruption in

26  access such as by failing to post signs identifying alternative disabled access routes are

27

28       [8]Both parties incorrectly apply 28 C.F.R. § 35.150 for existing facilities as to the
high-lines and asphalt placed by Water Group Job 944.

fact issues for the jury. Id. at 693, 701; but see Vazquez v. Municipality of Juncos, 756 F. Supp. 2d 154, 162 (D.P.R. 2010) (citing Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 22-23 (1st Cir. 2006)) (The First Circuit has made it abundantly clear that while a public entity may be excused from their duty to maintain facilities in working condition as a result of repairs, a public entity is still subject to fulfill its obligation through the delivery of services in alternate sites.); Partelow v. Massachusetts, 442 F. Supp. 2d 41, 48 (D. Mass. 2006) (quoting 28 C.F.R. § 35.150(b)(1)) (During temporary interruptions, "a public entity may fulfill its obligation to persons with disabilities "through such means as . . . delivery of services at alternate accessible sites . . . or any other methods that result in making its services . . .readily accessible to and usable by individuals with disabilities.").

Because both parties have raised genuine issues of material fact on the ADA cause of action as to the Water Group Job 944, the Court DENIES both parties' motions for summary judgment.[9]

## 2.   Programmatic Access to Sidewalks and Curb Ramps on El Cajon Blvd and University Ave and During Construction Projects on an Ongoing Basis

In her motion for partial summary judgment, Plaintiff argues that the City failed to provide programmatic access to the sidewalks along El Cajon Boulevard and University Avenue on an ongoing basis.  In the City's motion for summary judgment and opposition to Plaintiff's motion, the City argues the injunction Plaintiff seeks is moot because she has not identified specific barriers that she encountered and because the alleged barriers identified by Plaintiff has been repaired, removed, or are in the process of being repaired by the City. (Dkt. No. 45, D's List of Ex., Ex. 7, Maggio

---

[9]Plaintiff does not dispute that the alleged barriers related to the Water Group Job 944 have been removed and that the injunctive relief sought by Plaintiff related to these alleged barriers are moot. (Dkt. No. 54-1, P's Response to D's SSUF, No. 26; Dkt. No. 54 at 10; Dkt. No. 58 at 10.)  Even though the injunctive relief is moot, compensatory damages as to the alleged ADA violations concerning the alleged barriers erected during Water Group Job 944 still remain.

Decl. ¶¶ 22-30.)  The City also cites to its policies concerning repairs of sidewalks, in general, to demonstrate they provide program accessibility for sidewalks to disabled persons within the City on an ongoing basis.  In reply, Plaintiff does not dispute that the City has removed the barriers but argues that despite the City's corrective actions, it still believes that it has not violated the ADA and she states that in order to achieve full and complete relief, the City must be required to modify its policies for "for the proactive maintenance of the sidewalks in the City and must also be required to modify its policies for providing access to curb ramps during construction such as Water Group Projects."  (Dkt. No. 58, Pl's Reply Br. at 10.[10])

For injunctive relief, Plaintiff must show that she faces a real and immediate threat of substantial or irreparable harm.  Midgett, 254 F.3d at 850 (citation omitted).  If a plaintiff seeks to enjoin a government agency, her case must contend with the "well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Rizzo v. Goode, 423 U.S. 362, 378-79 (1976) (citations and internal quotation marks omitted).  Federal courts should not enjoin a state to conduct its business unless the plaintiffs show a "likelihood of substantial and immediate irreparable injury." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1042-43 (9th Cir. 1999).  Therefore, a strong factual record is required before a district court may enjoin a state agency.  Thomas v. Cnty. of Los Angeles, 978 F.2d 504, 508 (9th Cir. 1992).

A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  "A defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a Plaintiff's ADA claim." Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905  (9th Cir. 2011) (noting that a private plaintiff can sue only for injunctive relief).

The voluntary cessation doctrine is an exception to the general rule that a case

---

[10]Page numbers are based on the CM/ECF pagination.

is mooted by the end of the offending behavior.  Under the voluntary cessation doctrine, Defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc., 528 U.S. at 190; Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) ("burden of demonstrating mootness 'is a heavy one.'").  This is because "otherwise they would simply be free to 'return to (their) old ways' after the threat of a lawsuit had passed." Armster v. U.S. Dist. Court for Cent. Dist. of California, 806 F.2d 1347, 1359 (9th Cir. 1986) (quoting Iron Arrow Honor Society v. Heckler, 464 U.S. 67 (1983)).  Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Barnes v. Healy, 980 F.2d 572, 580 (9th Cir. 1992).  A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, 528 U.S. at 189.

Courts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification undo the offending conduct.  See Hickman v. State of Mo., 144 F.3d 1141, 1144 (8th Cir. 1998) (voluntary cessation doctrine made claims moot due to structural changes such as installation of ramps, pull and grab bars, and chair lifts); Kallen v. J.R. Eight, Inc., 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone."); Pickern v. Best W. Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1130 (E.D. Cal. 2002) (granting summary judgment where there was no factual dispute that defendant's renovations brought it into compliance with the ADA); Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000) (dismissing as moot plaintiff's ADA claims predicated on alleged architectural barriers that had been physically corrected); but see Moore v. Dollar Tree Stores Inc., 85 F.

Supp. 3d 1176, 1187 (E.D. Cal. 2015) (adjusting operation pressure of the exterior doors was not akin to a structural modification and Defendant did not submit any evidence these modifications were permanent).  Therefore, voluntary remediation of ADA violations that are not structural could easily reoccur and such remediation does not moot an issue.  See Johnson v. SSR Group, Inc., 15cv5094 MEJ, 2016 WL 3669994, at *4 (N.D. Cal. July 11, 2016) (voluntary remediation efforts that were not structural in nature, while laudable, could easily recur despite the defendant's best intentions); Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1274 (9th Cir. 1998) (request for injunctive and declaratory relief is not mooted by voluntary cessation of ADA violations by defendants; defendants "have not carried their heavy burden of establishing *either* that their alleged behavior cannot be reasonably expected to recur, *or* that interim events have eradicated the effects of the alleged violation") (emphasis in original).

Courts have held that promised improvements and even policy changes do not moot a claim for injunctive relief under the ADA.  See Bell v. City of Boise, 709 F.3d 890, 901 (9th Cir. 2013) (quoting Friends of the Earth, 528 U.S. at 189) (implementation of a Special Order did not moot claims); Clavo v. Zarrabian, No. SACV03864CJCRCS, 2004 WL 3709049 at *4 (C.D. Cal. May 17, 2004) ("implementation of new policy does not eliminate the possibility of future violations"); Watanabe v. Home Depot USA, Inc., No. CV25088RGKMCX, 2003 WL 24272650, at *4 n. 2 (C.D. Cal. July 14, 2003) (rejecting mootness argument since the defendant provided no evidence or persuasive argument that its unlawful conduct will not continue).

In this case, Plaintiff does not dispute that the alleged barriers along El Cajon Boulevard and University Avenue have been removed and/or repaired and does not argue that she will encounter barriers in the future in those areas.  The City has removed the barriers or is in the process of removing the barriers asserted by Plaintiff which involve structural modifications, (Dkt. No. 45, D's List of Exs., Ex. 7, Maggio

Decl. ¶¶ 7-37; Dkt. Nos. 45-1 to 45-9, D's List of Exs., Ex. 7, Maggio Decl., Exs. A-I); therefore, such barriers will not likely recur in the future.  Thus, the injunctive relief sought by Plaintiff seeking to access the sidewalks and curb ramps along El Cajon Boulevard and University Avenue are moot.  While the injunctive relief sought is moot, the issue of whether Plaintiff is entitled to compensatory damages on these alleged barriers has not been fully briefed.  Therefore, the ADA claim related to alleged barriers along El Cajon Boulevard and University Avenue for compensatory damages remain and the Court DENIES both parties' motions for summary judgment on this issue.

Next, Plaintiff seeks injunctive relief requiring the City to implement a program to maintain the accessibility of the sidewalks and curb ramps during construction projects, such as the Water Group projects, on an ongoing basis because the City has an affirmative and ongoing duty to provide access to individuals with disabilities. While there is such an ongoing duty, Plaintiff fails to either address the essential elements for obtaining a preliminary injunction or provide a strong factual record justifying an injunction against the City.  For example, she does not address whether she "faces a real or immediate threat of substantial or irreparable injury" which is an especially important factor when a party seeks to enjoin a state from conducting its own business.  Midgett, 254 F.3d at 850 (citing Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1042 (9th Cir. 1999)).  It is a "well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Rizzo, 423 U.S. at 378 (addressing district court's injunctive order significantly revising a city's police department's internal procedures).

Further, Defendant, in its response, states that since 1991, it has had an ADA Compliance and Accessibility department to ensure ADA compliance with City owned property and events.  The City relies on citizen's complaints in order to determine whether certain programs are accessible to individuals with disabilities. (Dkt. No. 44-5, Curtis Depo. at 11:9-18; 20:4-18; 36:21-37:4; Dkt. No. 44-7, Hughes Depo. at 16:6-

13.) Based on the existence of the ADA Compliance and Accessibility department and policy of being responsive to citizen complaints, the City argues it has provided program accessibility for pedestrian routes and sidewalks within the City when viewed in its entirety and cites to 28 C.F.R. § 35.150(a). However, the City fails to address the specific relief sought by Plaintiff and generally argues that it provides programmatic relief because it has a department that addresses ADA compliance based on complaints by citizens.

Moreover, in their analysis, both parties improperly cite to 28 C.F.R. § 35.150 for accessibility of existing facilities, which as discussed in detail above, does not apply in this case. (Dkt. No. 56 at 9; see Dkt. No. 46-1 at 11-13.) Instead, 28 C.F.R. § 35.151, for accessibility of new construction and alterations, applies.

In view of the above identified deficiencies, the Court DENIES both parties' motions for summary judgment as to prospective injunctive relief requiring the City to have programmatic access to sidewalks and curb ramps during any future construction projects.

### 3.   Compensatory Damages

In its reply, the City argues for the first time that Plaintiff is not entitled to compensatory damages because there is no evidence of discriminatory intent. (Dkt. No. 56 at 5.) In order to obtain compensatory damages under the ADA, Plaintiff must also show intentional discrimination. Ferguson v. City of Phoenix, 157 F.3d 668, 947-75 (9th Cir. 1998).

Arguments raised for the first time on reply is improper and should not be considered by the Court. See FT Travel-New York, LLC v. Your Travel Ctr, Inc., 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015); Kowalski v. Mommy Gina Tun Res., 574 F. Supp. 2d 1160, 1164 (D. Haw. 2008) (disregarding arguments made for the first time in summary judgment reply brief); see also State of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990) (declining to consider argument raised for the first time in appellants' reply briefs noting that it would be unfair to the opposing party who has not

1  had the opportunity to brief the issue).  Therefore, the Court declines to consider the
2  City's argument, raised for the first time in its reply brief, regarding compensatory
3  damages.

4  **D.  § 504 of the Rehabilitation Act**

5       Defendant moves for summary judgment on the § 504 cause of action based
6  solely on the exemption under 28 C.F.R. § 35.133(b).  (Dkt. No. 44-1, D's MSJ at 13.)
7  Plaintiff does not seek summary judgment on this claim but opposes Defendant's
8  motion.

9       "There is no significant difference in analysis of the rights and obligations
10  created by the ADA and the Rehabilitation Act."  Zukle v. Regents of Univ. of Calif.,
11  166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citing 42 U.S.C. § 12133).[11]  The Ninth
12  Circuit has applied a similar analysis to claims brought under the ADA and the
13  Rehabilitation Act.  Weinreich v. Los Angeles Cnty. Metro Transp. Autho., 114 F.3d
14  976, 978 (9th Cir. 1997); Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002)
15  (same remedies for violations of Title II of the ADA and § 504).

16       § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual
17  with a disability . . . shall, solely by reason of her or his disability, be excluded from
18  the participation in, be denied the benefits of, or be subjected to discrimination under
19  any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).
20  To establish a violation of § 504, "a plaintiff must show that (1) she is handicapped
21  within the meaning of the RA; (2) she is otherwise qualified for the benefit or services
22  sought; (3) she was denied the benefit or services solely by reason of her handicap; and
23  (4) the program providing the benefit or services receives federal financial assistance.
24  Lovell, 303 F.3d at 1052 (citing Weinreich, 114 F.3d at 978.)

25       Here, since the Court denied Defendant's motion for summary judgment based
26  on the exception allowed under 28 C.F.R. § 35.133(b) under the ADA, the Court also

27  _____

28       [11]"The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims]."  42 U.S.C. § 12133.

1  DENIES Defendant's motion for summary judgment on the § 504 cause of action based

2  on the same regulation.

3  **E.    California's Disabled Persons Act**

4      **1.    Failure to Comply with Government Code sections 945.4 and 945.6**

5          **a.    Barriers on the Sidewalks and Ramps**

6      In its motion, Defendant argues that Plaintiff is barred from seeking money

7  damages for violations alleged in paragraph 16[12] of the FAC since Plaintiff did not

8  submit a government claim regarding these issues as required by California

9  Government Code sections 945.4 and 945.6.[13]  Plaintiff does not oppose.

10      In California, "[s]uits for money or damages filed against a public entity are

11  regulated by . . . the Government Claims Act."  DiCampli-Mintz v. Cnty. of Santa

12  Clara, 55 Cal. 4th 983, 989 (2012).  "[N]o suit for money or damages may be brought

13  against a public entity on a cause of action for which a claim is required to be presented

14  . . . until a written claim therefor has been presented to the public entity and has been

15  acted upon . . .  or has been deemed to have been rejected. . . ."  Cal. Gov't Code §

16  945.4.   The claim must be filed no later than six months after the date the notice is

17

---

18      [12]Paragraph 16 of the FAC assert the following barriers on the sidewalks along

19  El Cajon Boulevard:
    a. The curb ramp on the corner of El Cajon Boulevard and Texas Street has a

20  raised piece of asphalt greater than ½ inches that creates a slope in excess of 16%;
    b. There are no curb ramps on the eastern side of El Cajon Boulevard and

21  Florida Avenue. There is a ramp on the northeast corner. However, this ramp has
excessive slopes over 12% and leads into the vehicular way where Plaintiff could

22  collide with oncoming traffic;
    c. The alleyways along on Texas Street and El Cajon Boulevard have several

23  elevation changes greater than ½ inches;
    d. The cross walk at the end of El Cajon Boulevard at Park Boulevard does not

24  provide sufficient time for wheelchair users to cross completely. The pedestrian push
button located at the mid-point of the cross-walk is inaccessible to wheelchair users

25  because there is no curb ramp to the island on which the push button is located;
    e. Several points along the sidewalks and crosswalks on El Cajon Boulevard

26  between Park Blvd. and 33rd Street have excessive cross-slopes and elevation changes
due to raised sidewalk panels and asphalt patches.

27  (Dkt. No. 25, FAC ¶ 16.)

28      [13]Although not explicit, the Court assumes Defendant intended that its argument
that Plaintiff's failure to comply with the government claims statute seeks judgment on
the DPA cause of action.

[15CV67-GPC(RBB)]

personally delivered or deposited in the mail.  Cal. Gov't Code § 945.6.  "The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an element that a plaintiff is required to prove in order to prevail." DiCampli-Mintz, 55 Cal. 4th at 990.  "Claim presentation is not merely procedural, it is "an integral part of plaintiff's cause of action." California v. Superior Court, 32 Cal. 4th 1234, 1240 (2004); see Ortega v. O'Connor, 764 F.2d 703, 707 (9th Cir.1985)), rev'd on other grounds, 480 U.S. 709 (1987) (holding plaintiff's failure to comply with claim presentation requirements of California Government Code is a bar to maintaining state law claims against governmental entity and its employees); Pacific Tel. & Tel. Co. v. Cnty. of Riverside, 106 Cal. App. 3th 183, 188 (1980) ("Compliance with the claims statute is mandatory, and failure to file a claim is fatal to the cause of action.")

Here, it is undisputed that Plaintiff submitted a Government Claim to the City of San Diego Risk Management Department on September 25, 2014.  (Dkt. No. 54-1, P's Response to City's SSUF No. 13; Dkt. No. 44-4, Zaldivar Depo., Ex. 5 at 37-38.)  The Government Claim notes that there were multiple occurrences in April/May 2014 along the sidewalks and intersections along El Cajon Boulevard from Park Boulevard to 33rd Street.  (Dkt. No. 44-4, Zaldivar Depo., Ex. 5, Gov't Claim at 37.)  Specifically, she claimed the following:

> Claimant is an individual with disabilities who requires an electric wheelchair for mobility. She has been prevented and deterred from using the sidewalks along El Cajon Blvd to travel in the community and patronize local businesses due to loose water pipes and hoses secured haphazardly by asphalt at curb ramps and intersections, creating excessive slopes, drops and other hazardous conditions.

(Id. at 38.)  Her government claim is limited to the "loose water pipes and hoses" created for purposes of Water Group Job 944.  Therefore, the alleged barriers presented in paragraph 16 of the FAC, concerning barriers she encountered on the sidewalks along El Cajon Boulevard were not properly presented to the City and Plaintiff is barred from seeking money or damages against the City under the DPA.

[15CV67-GPC(RBB)]

1    Accordingly, the Court GRANTS Defendant's motion for summary judgment on

2  the DPA claim for damages only to the extent it addresses alleged barriers she

3  encountered on the sidewalks and ramps as presented in paragraph 16 of the FAC.

4              **b.    High-lines and Asphalt**

5    Plaintiff moves for partial summary judgment arguing that any violation of the

6  ADA is a violation of the DPA. Similarly, Defendant argues that summary judgment

7  should be granted because since it did not violate the ADA, it cannot violate the DPA.

8    The California Disabled Persons Act states, "a violation of the right of an

9  individual under the Americans With Disabilities Act of 1990 also constitutes a

10  violation of this section." Cal. Civ. Code § 54.1(d); see also Jankey v. Song Koo Lee,

11  55 Cal. 4th 1038, 1045 (2012) (recognizing that the "Legislature amended the DPA to

12  incorporate ADA violations and make them a basis for relief under the act.").

13    Because the Court DENIES the parties' motions for summary judgment on the

14  ADA cause of action regarding the high-lines and asphalt during Water Group Job 944,

15  the Court also DENIES the parties' motions for summary judgment on the DPA claim

16  based on the high-lines and asphalt.[14]

17  **F.   Evidentiary Objections**

18    The City filed evidentiary objections to evidence in support of Plaintiff's motion

19  for partial summary judgment. (Dkt. No. 55-7.) The Court notes the City's objections.

20  To the extent that the evidence is proper under the Federal Rules of Evidence, the

21  Court considered the evidence. To the extent that the evidence is not proper, the Court

22  did not consider it.

23  _____

24    [14]Again, the City argues, alternatively, that even if Plaintiff were able to seek statutory damages, Plaintiff is not entitled to statutory damages because she failed to

25  provide the City with notice of the alleged construction-related accessibility issues under Construction-Related Accessibility Standards Compliance Act, ("CRASCA"),

26  Cal. Civ. Code section 55.56. Plaintiff responds that section 55.56 of the California Civil Code does not apply to public entities under Title II but only applies to public

27  accommodations under Title III. As such, Plaintiff concedes she is not entitled to statutory damages under CRASCA. In reply, the City does not address Plaintiff's

28  argument, and appears to concede that section 55.56 does not apply to public entities. Therefore, since Plaintiff agrees that she is not entitled to statutory damages under the CRASCA, the Court declines to address the City's argument.

**Conclusion**

Based on the above, the Court DENIES Plaintiff's and Defendant's motions for summary judgment on the ADA cause of action.  The Court DENIES Defendant's motion for summary judgment on the § 504 claim.  The Court also GRANTS Defendant's motion for summary judgment on the DPA cause of action seeking damages as it relates to barriers she encountered as presented in paragraph 16 of the FAC concerning the sidewalks and ramps along El Cajon Boulevard and University Avenue. The Court further DENIES both parties' motions for summary judgment as to the DPA cause of action which are based on violations of the ADA.

IT IS SO ORDERED.

DATED:  September 21, 2016

HON. GONZALO P. CURIEL
United States District Judge